NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

PHARMACIA CORPORATION (f/k/a Monsanto Company),

Plaintiff,

v.

MOTOR CARRIER SERVICES CORP., CSX INTERMODAL, INC., CSX CORPORATION, G.O.D., INC., and RILEY LEASING CORP.,

Defendants.

Civ. No. 04-3724 (GEB)

**MEMORANDUM OPINION**

**BROWN, Chief Judge**

This matter comes before the Court upon the Motion for Reconsideration of Defendants Motor Carrier Services, Corp. ("Motor Carrier"), CSX Intermodal, Inc. ("Intermodal") and CSX Corporation ("CSX") (collectively, "Defendants"), the Motion for Clean-up Costs and Attorneys' Fees of Plaintiff Pharmacia Corporation ("Pharmacia" or "Plaintiff"), and Plaintiff's and Defendants' respective Motions for Default Judgment. The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Defendants' motion for reconsideration, will deny Plaintiff's motion for attorneys' fees, will grant both Defendants' and Plaintiff's motions for default judgment, and will grant in part Plaintiff's Motion for clean-up costs.

**BACKGROUND**

The relevant facts of this case are set out in detail in this Court's June 20, 2007 Findings

of Fact and Conclusions of Law. On September 25, 2007, the Court denied Defendants' Motion to Compel Plaintiff to Discharge Notice of *Lis Pendens*. On July 9, 2007, Motor Carrier, CSX and Intermodal filed a Motion for Reconsideration of this Court's Order Declaring that Plaintiff Has a Right of Reentry and Termination and a Motion for Default Judgment on their cross-claim against G.O.D., Inc. ("G.O.D.") and Riley Leasing Corp. ("Riley"). On July 13, 2007 Motor Carrier, Intermodal and CSX filed a Motion for Clean-up Costs and Attorneys' Fees. On August 22, 2007, Pharmacia filed a Motion for Default Judgment against God and Riley. Each motion will be addressed in turn.

**DISCUSSION**

I. Defendants' Motion for Reconsideration

Defendants contend that this Court "overlooked controlling legal authority and dispositive factual matters" in concluding that Pharmacia obtained the right to reenter the Kearny property (the "Kearny Site") and terminate the estate in that property following Motor Carrier's breach of the 1994 Kearney Site Purchase and Sale Agreement (the "Agreement"). (Def. Recon. Br. at 1.) Defendants conclude that the Court should reconsider its June 20, 2007 Findings of Fact and Conclusions of Law. The Court disagrees.

The standard for reconsideration is high, and reconsideration is to be granted only sparingly. *United States v. Jones,* 158 F.R.D. 309, 314 (D.N.J. 1994), *citing Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986). In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration.[1] L. CIV. R. 7.1(i). The movant has the burden of

[1] On February 24, 2005, Local Civil Rule 7.1(g), which governed motions for reargument, was repealed. Now Local Civil Rule 7.1(i) governs motions for reconsideration. Despite the rule's reassignment to a different subsection of Rule

demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999), *citing N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999); *see also* L. CIV. R. 7.1(i). "The operative word in the rule is 'overlooked'." *Id.* Reconsideration is not available for a party seeking merely to reargue matters already addressed by the Court. *See G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990).

Defendants contend that this Court held, in its June 20, 2007 Findings of Facts and Conclusions of Law, that "as a result of a breach of the Agreement's indemnification provisions in the form of Motor Carriers' [sic] refusal to reimburse Pharmacia, Pharmacia has the right to reenter and terminate." Def. Recon. Br. at 7. Defendants submit, however, that this conclusion overlooked this Court's own September 25, 2006 Opinion on Defendant's Motion to Compel Pharmacia to Discharge a Notice of *Lis Pendens*. *Id.* Defendants had requested that the Court grant that motion because Pharmacia's First Amended Complaint "failed to allege a claim that came within the ambit of N.J.S.A. 2A:15-6." *Id.* In particular, Defendants contend that the Court at the time agreed with its argument that "the Notice of *Lis Pendens* should be discharged because the First Amended Complaint did not assert any claims that would affect the title to real

---

7.1, it remains substantively the same and is decided under the same stringent standard.

estate." *Id.* at 8.

Defendants claim that Plaintiff's Second Amended Complaint failed to remedy the deficiencies outlined in the Court's September 25, 2006 Opinion. Indeed, Defendants argue that "[n]one of the additions that Pharmacia made to its pleadings on the eve of trial added anything of relevant substance that was not already included in the First Amended Complaint." *Id.* at 10. Defendants therefore maintain that

> [t]he Court's original conclusion – that the First Amended Complaint did not assert any action that would affect the title to real estate – must also apply to the Second Amended Complaint. And because the breach of the indemnification provisions of the Agreement arising from the Motor Carrier's [sic] alleged refusal to reimburse Pharmacia does not affect he title to real estate, it cannot logically trigger Section 1.5(b) of the Agreement.

*Id*.

In addition, Defendants contend that interpreting Section 1.5 of the Agreement as being triggered by breaches of the indemnification provisions would lead to an "undeserved windfall for Pharmacia." *Id.* at 11. Indeed, Defendants assert that any attempt on their part to cure the breach of the Agreement by indemnifying Pharmacia would be futile if Pharmacia decided that the breach could not be cured unless Motor Carrier paid all of the clean up costs – many of which may not be incurred for years to come. *Id.*

In sum, Defendants contend that "[t]he Court erroneously ruled that the breaches alleged in the Second Amended Complaint could trigger the procedure spelled out in Section 1.5(b)," and request that the Court reconsider that ruling. *Id.* at 12. Defendants request, in the alternative, that the Court "amend its Findings of Fact and Conclusions of Law, as well as its Order, to make clear that Pharmacia does not have any present right to enforce or otherwise act

upon any right to reenter and terminate." *Id*. at 13.

In response, Plaintiff argues as a threshold matter that Defendants improperly challenge this Court's findings of facts and conclusion, and that Local Rule 7.1 does not encompass the kind of review sought by Defendants here. Pl. Recon. Opp'n at 5-6. Plaintiff insists that "CSX's current motion is properly before the Court only to the extent CSX seeks reconsideration of the Court's ruling on its motion to dismiss the Second Amended Complaint, which is contained in the June 22, 2007 Opinion." *Id.* at 6. Plaintiff concludes that "the only issue for the Court to consider . . . is whether it failed to consider controlling law or dispositive facts in arriving at the conclusion that the pleadings of the Second Amended Complaint set forth a legal claim for the right to reenter the property." *Id.* at 6.

Turning to the substance of Defendants' claims, Plaintiff contends that Defendants' position is premised on incorrect factual assumptions, as the "Second Amended Complaint clearly is not an action for the recovery of money damages only." *Id.* at 7-8. Indeed, Plaintiff claims that the Second Amended Complaint references its right to reenter and terminate the estate on at least two occasions, and mentions the reverter provision of Section 1.5(b) of the Agreement. *Id.* at 8.

Finally, Plaintiff maintains that there is no need for the Court to clarify its June 20, 2007 Order. *Id.* at 10. Indeed, Plaintiff claims that the Court's June 20, 2007 Findings and Facts and Conclusions of Law – which reference the Order – clearly establish "that CSX's refusal to reimburse Pharmacia for the costs of cleanup constituted a breach of the Agreement, and that if Pharmacia complies with the conditions set out in Section 1.5(b)(ii)(aa)-(dd) of the Agreement, it may terminate Motor Carrier's estate and reenter the Kearny Site. *Id.* at 10-11.

Under Local Rule 7.1(i), "[a] motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original *motion* . . . ." L. CIV. R. 7.1(i) (emphasis added). Defendants' motion for reconsideration, to the extent it seeks reconsideration of this Court's Findings of Facts and Conclusions of Law, is therefore improper. Defendants should seek relief from the Court of Appeals. This Court may, however, consider the motion to reconsider as a request for review of its denial of Defendants' Motion to Dismiss the Second Amended Complaint.

The Court, however, is not persuaded by Defendants' arguments. Defendants' contention that the Second Amended Complaint does not set forth any claims that would affect real estate is baseless. The Second Amended Complaint specifically references the right to reenter the property and terminate the estate upon meeting the pre-conditions set out in the Agreement on a number of occasions.[2] The Court's Findings of Fact and Conclusions of Law are thus entirely consistent with its September 25, 2006 Opinion. The Court did not, therefore, commit a "clear error of law". Moreover, Defendants have offered no evidence of an "intervening change in the controlling law," and have not attempted to introduce "new evidence that was not available

---

[2] *See* Second Am. Compl. at 2 ("By this action, Pharmacia seeks a declaratory judgment that Defendants have breached the Kearny Site Purchase and Sale Agreement . . . and that Pharmacia is entitled to reenter and terminate the estate granted to Defendants subject to Section 1.5(b) of the Agreement."); *see also id.* at 8 ("51. Pursuant to Section 1.5 of the Kearny Site Agreement, Pharmacia has the right … to reenter and terminate the estate granted to Motor Carrier (or any successor in title or interest to Motor Carrier) … upon the occurrence of …any breach of any conditions and obligations of Motor Carrier, its Affiliates, its successors in title or interest or assigns in the Deed or [the Kearny Agreement]."); *id.* ("52. By a Deed, dated December 19, 1994, Pharmacia granted the Kearny Site to Motor Carrier in fee simple subject to a condition subsequent with a right of reentry for condition broken on the terms and conditions identified and described in the Deed, including but not limited to, that Motor Carrier shall perform all of its obligations under the Kearny Site Agreement.").

when the court issued its order." *See Max's Seafood Café*, 176 F.3d at 677. Finally, the Court is not convinced that granting Plaintiff the right to reenter would lead to "manifest injustice." This is not one of those rare cases in which reconsideration is warranted. Defendants' motion is therefore denied.

II. Plaintiff's Motion for attorneys' fees and clean-up costs

"In New Jersey, [courts] accept . . . the premise of the American Rule that ordinarily society is best served when the parties to litigation each bear their own legal expenses." *Coleman v. Fiore Bros., Inc.*, 113 N.J. 594, 596 (1989), *citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). "Consistent with this policy, attorney's fees are not recoverable absent express authorization by statute, court rule or *contract*." *First Atl. Fed. Credit Union v. Perez*, 391 N.J. Super. 419, 425 (N.J. Super. Ct. App. Div. 2007) (emphasis added), *citing State of New Jersey, D.E.P. v. Ventron Corp.*, 94 N.J. 473, 505 (1983). "Because of the general policy disfavoring fee-shifting arrangements, however, contractual provisions establishing such arrangements are strictly construed." *Kellam Assocs., Inc. v. Angel Projects, LLC*, 357 N.J. Super. 132 (N.J. Super. Ct. App. Div. 2003), *citing McGuire v. City of Jersey City*, 125 N.J. 310, 326-27 (1991).

Plaintiff contends that it incurred attorneys' fees for two distinct representations: (i) the representation of Pharmacia in connection with the EPA and NJDEP proceedings and in connection with the the Lower Passaic River Study Area Cooperating Parties Group (collectively, the "Agency Proceedings"), and (ii) the representation of Pharmacia during the instant litigation against Motor Carrier (the "Litigation"). Pl. Fee Br. at 4-6. Plaintiff argues that attorneys' fees for both of these projects are reasonable, adequately supported by the record, and attributable,

under Sections 1.5, 2.3, 2.5 and 9.9 of the Agreement, to Motor Carrier.

Defendants respond that the language of the Agreement compels the conclusion that the attorneys' fees incurred in connection with this Litigation are not reimbursable under the Agreement. Def. Fee Opp'n at 12-14. In addition, Defendants contend that Pharmacia may not be reimbursed for the attorneys' fees it has incurred in both the Agency Proceedings and the Litigation because "Pharmacia has failed to present any evidence of such fees or costs at trial." *Id.* at 16. Defendants insist that Pharmacia erred in interpreting this Court's pronouncement that it would proceed on the issue of attorneys' fees after a decision on the merits as meaning that the issue would be handled in a post-trial proceeding. *Id.* at 18-19. Defendants appear to argue that Pharmacia should have presented all its evidence at the trial and expected a decision on the attorneys' fees after this Court's decision on the merits. Finally, Defendants contend that Plaintiff's request for attorneys' fees should be rejected because "they are not adequately supported and are unreasonable." *Id.* at 20.

Turning to the language of the Agreement, the Court notes that Section 2.3 of the Agreement provides that: "[e]xcept as otherwise provided in Section 2.2 of this Agreement, Purchaser [Motor Carrier] and its respective successors in title or interest and assigns shall bear and be liable for: (i) any and all costs and expenses (including attorney's fees) of Clean up . . . ." Agreement, § 2.3. Section 2.5 of the Agreement, for its part, states that:

> Purchaser and its respective successors in title or interest and assigns will be liable for and will indemnify, save and hold harmless Monsanto, its affiliates, their predecessors in title or interest, successors, and assigns, those for whom Monsanto would be liable and DOEA of any of the foregoing from and against: . . . (c) all reasonable legal fees, costs and expenses incurred by Monsanto or its affiliates, their predecessors in title or interest,

> successors and assigns, those for whom Monsanto would be liable and DOEA of any of the foregoing in connection with defense of claims against them for such Fines or Clean-up costs . . . .

Agreement, § 2.5. Finally, Section 9.9 of the Agreement provides, in relevant part,

> In the event that . . . any notice claim, action, suit or proceeding . . . is given to or made against Monsanto . . . or the Motor Carrier Group . . . with respect to any matter covered by the foregoing indemnities or indemnities set forth in Sections 2.4 or 2.5, the party . . . against whom the Claim is asserted (the "Indemnified Party") will give prompt notice to the other party hereto (the "Indemnifying Party") . . . provided . . . that if the Indemnifying Party does not give such notice within seven (7) days after receipt of notice from the Indemnified Party . . . the Indemnifying Party will be bound by any defense or settlement that the Indemnified Party may make as to such Claim and will reimburse the Indemnified Party for any and all costs and expenses (including reasonable attorney's fees) resulting therefrom.

Agreement, § 9.9.

Reviewing the plain meaning of the language of the Agreement and construing its provisions narrowly, the Court finds that Defendants need not reimburse Pharmacia's attorneys' fees in the Litigation, but that the Agreement does not rule out such compensation for fees incurred in the Agency Proceedings. Indeed, the attorneys' costs incurred in connection with the Agency Proceedings were undeniably costs of Clean-Up as defined in the Agreement because they arose during the representation of Pharmacia in discussions and negotiations with the relevant environmental agencies, at a time when those agencies were assessing the environmental damage sustained at the Kearny Site and the Lower Passaic River and were trying to attribute liability for such damage. The attorneys' fees incurred in connection with the Litigation, however, do not qualify as costs of Clean-Up under the Agreement, and are in fact only tangentially related to the clean-up of the Kearny Site. The Litigation was in essence an action

for contribution – the reimbursement of the attorneys' fees incurred by Pharmacia during that proceeding was not contemplated under the Agreement.

The Court, however, finds unconvincing Defendants' argument that Plaintiff misinterpreted this Court's pronouncement and should therefore be deemed to have waived its right to attorneys' fees by failing to put forward evidence to back up its claim at trial. On January 9, 2007, this Court ordered that it would bifurcate the issue of attorneys' fees, and that it would "proceed on that later" if it found in Pharmacia's favor. Trial Transcript, Jan. 9, 2007 P.M. session at 68:13-19. The Court did not expect Plaintiff to nonetheless put forward evidence relevant to the attorneys' fees during trial. It would be inequitable to now hold that Plaintiff – by complying with this Court's clear Order – has relinquished its right to compensation. The Court rejects Defendants' argument to that effect.

The Court does however find troubling Pharmacia's failure to submit reasonably detailed evidence of its attorneys' fees. The Court has only been presented with (i) invoices setting out the total amount of hours of work performed by each participating attorney over the billing period and (ii) biographies of the attorneys involved in the matter. *See* Affidavit of John McGahren (McGahren Aff.) Ex. D-E. Under the circumstances, the Court cannot rule upon the reasonableness of the fees requested. A more detailed breakdown of the amounts billed and services performed would allow the adversary to respond and the Court to make that determination. The Court will therefore deny Plaintiff's motion for attorneys' fees, without prejudice to a further submission within 20 days.

III. Motions for a Default Judgment

A. Standard

Federal Rule of Civil Procedure 55(b)(2) allows courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.'" *Signs by Tomorrow - USA, Inc. v. Engel Co., Inc.*, No. 05-4353, 2006 US Dist Lexis 56456, at *5-6 (D.N.J. Aug. 1, 2006), *quoting Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984).

"Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages." *Signs*, at *6, *citing Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "Consequently, before granting a default judgment, the Court must first ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Signs*, at * 6, *quoting Directv, Inc. v. Asher*, No. 03-1969, 2006 U.S. Dist. LEXIS 14027, at *1 (D.N.J. Mar. 14, 2006).

B. Application

On July 9, 2007, Defendants requested an Order from the Court granting them a default Judgment on their cross-claim against G.O.D., Inc. ("G.O.D.") and Riley Leasing, Inc. ("Riley"). On August 22, 2007, Plaintiff filed its opposition to Defendants' request for a default judgment, and filed its own request for entry of default judgment against G.O.D. and Riley.

1. Plaintiff's Motion

Plaintiff contends that it is entitled to an Order of Default Judgment because the Court granted such a judgment at trial. Pl. Default Opp'n at 6. Indeed, on January 9, 2007, counsel for Pharmacia noted at trial that "there ha[d] been no evidence presented with, or on behalf of GOD or Reilly [sic]," and moved for "the appropriate motion for default at [that] time." Trial Transcript, January 9, 2007, P.M. Session, at 68:20-69:23. Having ascertained that G.O.D. and Riley had received notice of the litigation, the Court granted Plaintiff's motion for default judgment. *Id.* at 69:6-20. Counsel for Defendants did not object at that time. In light of this record, the Court hereby confirms that judgment for default against G.O.D. and Riley has been entered in favor of Pharmacia.

2. Defendants' Motion

Defendants contend that the Court has already defaulted G.O.D. and Riley in connection with Defendants' cross-claims and argue that they have satisfied the notice requirements of Rule 55(b)(2). Def. Default Reply at1. Defendants conclude that they are entitled to a default declaratory judgment. Moreover, Defendants claim that Pharmacia may not object to its request for default because it does not have standing to do so as "it will not be affected in any way by the entry of that judgment." *Id.* at 3. Defendants also contend that Plaintiff's objections are untimely, as this Court entered the default more than seven months ago. *Id.* at 5, *citing* Pl. Default Opp'n at 6. Plaintiff, however, responds that the Court's June 22, 2007 ruling is limited to Defendants' contractual liability to Pharmacia, and did not address Pharmacia's right to contribution under the Spill Act or CERCLA. Pl. Default Opp'n at 6.

"The principle of standing involves both constitutional and prudential limitations."

*Scanlin v. TD Waterhouse, Inc.*, No. 05-2458, 2006 U.S. Dist. LEXIS 86849, at *6 (M.D. Pa. Nov. 30, 2006), *citing Warth v. Seldin*, 422 U.S. 490, 498 (1975). The constitutional limitations derive from Article III of the Constitution, which limits the jurisdiction of the federal courts to deciding "actual cases and controversies. *See* U.S. CONST. ART. III. “To meet the Article III standing requirements, a plaintiff himself must have ‘suffered some threatened or actual injury resulting from the putatively illegal action.’” *Scanlin*, at *6, *quoting Warth*, 422 U.S. at 499 (internal citations omitted). As for the prudential requirements, they dictate that a plaintiff “cannot rest his claim to relief on the legal rights or interests of third parties.” *Warth*, at 499.

Plaintiff here has acknowledged that its rights will not be affected by the entry of a default judgment. *See* Pl. Default Opp’n at 2. Objecting to Defendants’ request for a default judgment was the province of G.O.D. and Riley alone. Accordingly, the Court finds that Plaintiff does not have standing to set forth its objections to Defendants’ motion for default judgment. The Court is not convinced, however, that it has already ruled on Defendants’ request for a default judgment. The transcript of the relevant proceedings reads as follows:

> THE COURT: Any reason why default should not be entered against GOD and Reilly? [sic]
> MR. MCTIERNAN [Counsel for Defendants]: We know of no reason, Your Honor, and that includes I think any cross-claim that they’ve asserted against any other defendant in the matter.
> THE COURT: All right. Default entered.
> . . .
> THE COURT: Against them. And, against on any cross claimant.
> MR. MCGAHREN [Counsel for Plaintiff]: And counter claims, Your Honor?
> THE COURT: And counter claims.

Trial Transcript, January 9, 2007, P.M. Session, at 69:15-25. The Court did not rule at that time that Defendants were entitled to a default judgment on their claims against G.O.D. and Riley.

The Court will now, however, grant Defendants' request. Indeed, as highlighted by Defendants, G.O.D. and Riley filed answers to Plaintiff's initial Complaint but failed to answer Defendants' cross-claims and did not make an appearance at trial. Def. Default Reply at 3. There is no indication that G.O.D. and Riley have been improperly served. The Court will therefore, in its discretion, grant Defendants' Motion for Default Judgment against G.O.D. and Riley. The Court notes that it is hereby only deciding that Defendants have prevailed on the specific cross-claims they have put forward against G.O.D. and Riley – it need not decide at this juncture whether the damages awarded against Defendants as a result of this Court's Findings of Fact and Conclusions of Law qualify as damages for which Defendants are entitled to contribution under those cross-claims.

IV. Motion for Clean-Up Costs

Pharmacia requests $468,431.22 in clean-up costs under this Court's June 20, 2007 Order. That amount consists of $377,222.20 for which it presented evidence at trial, and $91,209 in expenses incurred since then. Defendants, however, appear to contend that Pharmacia may not recover the amount it claims for clean-up costs incurred after trial because it has failed to present evidence of such expenses at trial.

The Court finds Defendants' argument puzzling. If adopted, it would eviscerate this Court's June 20, 2007 Order, which ordered Motor Carrier to

> indemnify Pharmacia pursuant to the Agreement for any and all costs for which Pharmacia is or becomes liable to NJDEP and USEPA pursuant to the NJDEP Directive, the USEPA Order . . . or any future action by NJDEP, USEPA or any other regulatory agency related to the remediation of the Lower Passaic River, *and for future cleanup of the Kearny Site*.

6/20/07 Order (emphasis added). The Court will therefore grant Plaintiff's request for clean-up costs. The Court has noted, however, the inconsistency in the pre-trial administrative costs to the LPRSA CPG claimed by Plaintiffs, and will accordingly reduce the amount granted for such costs to $135,000.[3]

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendants' motion for reconsideration, will grant in part and deny in part Plaintiff's motion for attorneys' fees, will grant both Defendants' and Plaintiff's motions for default judgment, and will grant in part Plaintiff's motion for clean-up costs in the amount of $448,431.22.[4] An appropriate form of Order accompanies this Opinion.

Dated: September 17, 2007

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

---

[3] *Compare* McGahren Aff. ¶ 4 (claiming payment of $155,000 in administrative costs to the LPRSA CPG) *with* McGahren Aff., Ex. A (setting forth invoices for LFRSA administrative assessments totaling $135,000).

[4] This amount consists of $222,222.22 in pre-trial payments to the EPA, $135,000.00 in pre-trial administrative costs paid to the LPRSA CPG, $74,871.00 in post-trial EPA payments and $16,338 in post-trial LPRSA administrative costs.