**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PHARMACIA CORPORATION, (f/k/a Monsanto Company) : : : | |
| Plaintiff : | Civ. No. 04 - 3724 (GEB) |
| v. : : | |
| MOTOR CARRIER SERVICES CORP., : CSX INTERMODAL, INC., : CSX CORPORATION, : G.O.D., INC., and : RILEY LEASING CORP., : : Defendants : : | **MEMORANDUM OPINION** |

**BROWN, Chief Judge**

This matter comes before the Court upon Plaintiff Pharmacia Corporation's ("Pharmacia" or "Plaintiff") Motion for Attorneys' Fees against Motor Carrier Services Corp. ("Motor Carrier"), CSX Intermodal, Inc. ("Intermodal") and CSX Corporation's ("CSX") (collectively, the "CSX Defendants"); and the CSX Defendants' Motion for Allocation and Award of Contribution from Defendants G.O.D., Inc. ("G.O.D.") and Riley Leasing Corp. ("Riley") (collectively, the "Riley Defendants"). The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will grant Pharmacia's motion and deny the CSX Defendants' motion.

**BACKGROUND**

The Court conducted a non-jury trial in this matter from January 3 to January 11, 2007. The relevant facts of this case are set out in detail in this Court's June 20, 2007 Findings of Fact and Conclusions of Law.  (Docket No. 155.)  On September 17, 2007 the Court denied without prejudice Plaintiff's First Motion for Attorney's fees.  (Docket No. 180.)  That opinion held that the 1997 agreement for the sale of the Kearny Site (the "Agreement") did not rule out compensation for the attorney fees incurred by Pharmacia in the agency proceedings before the United States Environmental Protection Agency ("EPA") and the New Jersey Department of Environmental Protection ("NJDEP").  (*Id.*)  This Court declined, however, to award the attorneys' fees sought by Pharmacia because of Plaintiff's "troubling . . . failure to submit reasonably detailed evidence of its attorneys' fees."  (*Id*. at 10.)  On October 5, 2007 Plaintiff filed a renewed motion for attorneys' fees, and on October 8, 2007 the CSX Defendants filed a motion for allocation and award of contribution.

**DISCUSSION**

      A.      Pharmacia's Motion for Attorneys' Fees

Plaintiff submits that it is entitled to attorneys' fees in the amount of $469,360.24 incurred primarily  in connection with the EPA and NJDEP investigations.  (Pl. Br. at 8-9.)  The Court agrees.

As explained in the September 17, 2007 Opinion, "[i]n New Jersey, [courts] accept . . . the premise of the American Rule that ordinarily society is best served when the parties to litigation each bear their own legal expenses."  *Coleman v. Fiore Bros., Inc.*, 113 N.J. 594, 596 (1989), *citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  "Consistent with

this policy, attorney's fees are not recoverable absent express authorization by statute, court rule or *contract*." *First Atl. Fed. Credit Union v. Perez*, 391 N.J. Super. 419, 425 (N.J. Super. Ct. App. Div. 2007) (emphasis added), *citing State of New Jersey, D.E.P. v. Ventron Corp*., 94 N.J. 473, 505 (1983). "Because of the general policy disfavoring fee-shifting arrangements, however, contractual provisions establishing such arrangements are strictly construed." *Kellam Assocs., Inc. v. Angel Projects, LLC*, 357 N.J. Super. 132, 137 (N.J. Super. Ct. App. Div. 2003), *citing McGuire v. City of Jersey City*, 125 N.J. 310, 326-27 (1991).

This Court then held that:

> [r]eviewing the plain meaning of the language of the Agreement and construing its provisions narrowly, the Court finds that Defendants need not reimburse Pharmacia's attorneys' fees in the Litigation, but that the Agreement does not rule out such compensation for fees incurred in the Agency Proceedings. Indeed, the attorneys' costs incurred in connection with the Agency Proceedings were undeniably costs of Clean-Up as defined in the Agreement because they arose during the representation of Pharmacia in discussions and negotiations with the relevant environmental agencies, at a time when those agencies were assessing the environmental damage sustained at the Kearny Site and the Lower Passaic River and were trying to attribute liability for such damage. The attorneys' fees incurred in connection with the Litigation, however, do not qualify as costs of Clean-Up under the Agreement, and are in fact only tangentially related to the clean-up of the Kearny Site.

(Docket No. 180, at 9.)  The Court declined to rule upon the reasonableness of the fees requested by Pharmacia, noting that "[a] more detailed breakdown of the amounts billed and services performed would allow the adversary to respond and the Court to make that determination." (*Id.* at 10.)  Indeed, [u]nder Local Civil Rule 54.2, this Court requires an affidavit setting forth:

> (1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and

> other factors pertinent to the evaluation of the services rendered;
> (2) a record of the dates of services rendered;
> (3) a description of the services rendered on each of such dates by
> each person of that firm including the identity of the person
> rendering the service and a brief description of that person's
> professional experience;
> (4) the time spent in the rendering of each such services; and
> (5) the normal billing rate for each of said persons for the type of
> work performed.

L. CIV. R. 54.2.  Once Pharmacia provides such evidence, "the burden shifts to [the CSX

Defendants] to contest, with sufficient specificity, the reasonableness of the hourly rate or the

reasonableness of the hours expended."  *Microsoft Corp. v. United Computer Resources of N.J.,*

*Inc.*, 216 F. Supp. 2d 383, 387 (D.N.J. 2002).

The CSX Defendants oppose Plaintiff's renewed motion for fees, arguing that the

Agreement provides only for the reimbursement of attorney fees that are "reasonable", and that

Pharmacia's claimed attorney fees fail to meet that standard.  (CSX Def. Opp'n at 4.)  Indeed, the

CSX Defendants suggest that:

> [a] side-by-side comparison of the rates charged by Pharmacia's
> attorneys with the rates charged by attorneys of similar experience
> at the firm of Defendants' counsel shows that the rates of
> Pharmacia's counsel are almost invariably, and often substantially
> higher  – sometimes by well over $100 per hour.

(*Id.* at 6, *citing* Certification of Ed McTiernan ("McTiernan Cert.") ¶¶ 2-10.)  The CSX

Defendants concede that part of the difference is attributable to the fact that some of Plaintiff's

attorneys were billing at Washington, D.C. rates, rather than New Jersey rates, but nonetheless

recommend that the Court reduce the billing rates by $100 per hour for each member of the

Plaintiff's legal team. (CSX Def. Opp'n at 6-7.)

Second, the CSX Defendants contend that the number of attorneys assigned to the EPA

4

matter (14) suggests "inefficient staffing, duplicative work, and unproductive 'learning time' . . . ." (*Id*. at 7.)  Conversely, they also claim that the fees sought by Pharmacia are unreasonable because high-billing senior attorneys performed most of the work, including work that should have been performed by more junior attorneys.  (*Id.* at 8.)  The CSX Defendants further decry the allegedly unexplained peaks in the number of hours billed between June 1, 2007 and August 31, 2007, and suggest that the "bills for that three-month period are so filled with acronyms and so lacking in detail as to make meaningful analysis of them difficult if not impossible." (*Id.* at 10.)

Third, the CSX Defendants allege that the bills for that period include references to matters for which Pharmacia is not entitled to attorney fees.  In particular, the CSX Defendants suggest that Pharmacia is not entitled to attorney fees in connection with the claim asserted by the National Oceanic Atmospheric Administration ("NOAA").  (*Id.* at 11.)  Similarly, they object to the recovery of attorney fees for what they claim is the "development and implementation of so-called 'political' strategies." (*Id.*)

Finally, the CSX Defendants note that "Pharmacia did not include any documents regarding attorneys' fees or other legal expenses" among the proposed trial exhibits listed in the Joint Final Pretrial Order.  (*Id.* at 13.)  The CSX Defendants conclude that this Court must deny Plaintiff's motion because it cannot take into consideration documents that were not so included. (*Id.*)

Pharmacia, in response, submits that it has now provided the Court with the documentation it requested on September 17, 2007 and that it should therefore be granted the attorney fees it seeks.  First, Plaintiff argues that it was not unreasonable for Pharmacia to have most of its work on this case assigned to senior attorneys such as John McGahren and John

Corbett.  (Pl. Reply at 2.)  In fact, Pharmacia argues that it was the prudent thing to do given the

magnitude of the potential liability to which it might be exposed and because of the institutional

knowledge accumulated by these senior lawyers as a result of their involvement with the Lower

Passaic River Study Area Cooperating Parties Group ("CPG") and the first EPA settlement.  (*Id.*

at 3.)  Pharmacia also insists that "nearly every other member of the . . . CPG represented by

outside counsel retain[ed] attorneys who are equal or senior to Messrs. McGahren and Corbett."

(*Id.* at 4.)

        Second, Plaintiff explains that "Latham and Patton Boggs have charged Pharmacia at rates

that are reasonable and comparable to those charged by other New Jersey/New York metropolitan

area firms working on complex environmental matters . . . ."  (Pl. Br. at 7.)  Plaintiff dismisses the

CSX Defendants' argument that its fees are unreasonable when compared to those of Gibbons,

P.C.  Indeed, Plaintiff explains that their argument "erroneously assumes that an attorney's date of

graduation from law school is dispositive of the rate that attorney should charge," and notes that

counsel for the CSX Defendants billed as much as $600 per hour *in 2002.*  (Pl. Reply at 7, *citing*

Charles Toutant, *Firms Hike Rates, Weak Economy Notwithstanding*, 170 N.J.L.J. 1025 (Dec. 23,

2002).)

        Finally, Pharmacia suggests that the Court should dismiss the CSX Defendants' request

that the Court disregard any materials submitted in support of the instant motion that was not

listed in the Joint Final Pretrial Order.  Indeed, Pharmacia argues that this argument is precluded

by this Court's acknowledgment, in its September 17, 2007 Opinion, that it had ordered the

damages section of this trial to be bifurcated.  (Pl. Reply at 8.)

        Having reviewed the parties' submissions, the Court holds that the hourly rates billed by

Pharmacia's attorney are not unreasonable in light of recent Court of Appeals opinions on the issue.  *See Tenafly Eruv Ass'n v. Borough of Tenafly* 195 Fed. App'x  93 (3d Cir.  2006) (deeming hourly rates of $550 reasonable for the New Jersey market in 2002).  The side-by-side comparison of the billing rates of Patton Boggs, LLP and Gibbons, P.C., advocated by the CSX Defendants, is not particularly informative and is of little relevance here.  The Court has reviewed the invoices submitted by Pharmacia and holds that they comply with the requirements of Local Civil Rule 54.2 and do not corroborate the CSX Defendants' claims of over-billing.

The Court finds unpersuasive the CSX Defendants' suggestion that the billing patterns of Plaintiff's counsel are suspect because two senior attorneys account for the vast majority of the fees attributable to a team of over a dozen attorneys.  Mr. McGahren and Mr. Corbett have been involved with the legal proceedings arising out of the environmental impact of the Kearny Site for an extended period of time.  Given the level of institutionalized knowledge they have accumulated over that time, their billing patterns do not seem unreasonable to the Court.[1]

The Court also rejects the CSX Defendants' claims that Plaintiff should not be awarded attorneys' fees incurred in connection with the NOAA investigation.  This Court held on June 20, 2007 that:

> Motor Carrier, CSX and Intermodal shall indemnify Pharmacia pursuant to the Agreement for any and all costs for which Pharmacia is or becomes liable to NJDEP and USEPA pursuant to the NJDEP Directive, the USEPA Order as amended by Amendment No. 1, *or any future action by* NJDEP, USEPA or *any*

---

[1]    The Court finds meritless the CSX Defendants' claim that the invoices for the period between June 1, 2007 and August 31, 2007 are "so filled with acronyms and so lacking in detail as to make meaningful analysis of them difficult if not impossible."  (CSX Def. Opp'n at 10.)  The Court has reviewed the entries at issue - they are neither unduly cryptic nor vague.

> *other regulatory agency related to the remediation of the Lower*
> *Passaic River, and for future cleanup of the Kearny Site.*

(Docket No. 155, at 36 (emphasis added).)  NOAA is a federal agency focused on the condition of

the oceans and the atmosphere. *See* NOAA website, *available at* www.noaa.gov/about-noa.html.

NOAA's August 2007 letter to Pharmacia explained that it invited Pharmacia to "investigate

damage to natural resources in the Lower Passaic River in partnership with NOAA."  (Docket No.

190, at 2.)  Costs arising in connection with the NOAA investigation thus fall under the purview

of this Court's Findings of Facts and Conclusions of Law assigning liability to the CSX and Riley

Defendants.  Moreover, the attorneys' fees incurred in connection with the investigation must –

under the rationale adopted by this Court on September 17, 2007 – be considered "costs of

cleanup" under the Agreement for which Pharmacia is entitled to reimbursement.

Finally, the Court rejects the argument that it cannot, at this juncture, take into

consideration documents that were not appended to the Pretrial Order.  As the Court explained in

its September 17, 2007 Opinion, we specifically requested that the damages portion of this matter

be bifurcated.   Pharmacia shall not be penalized for complying with this Court's Order.

B.      Motion for Allocation and Award of Contribution

The CSX Defendants contend that the Court should "enter a judgment allocating to the

Riley Defendants all of the damages (excluding Pharmacia's attorneys' fees) awarded against the

CSX Defendants in this action."  (CSX Def. Br. at 2.)  The Court disagrees.

On September 17, 2007, this Court issued its Opinion on Plaintiff's First Motion for

Attorney Fees and both Plaintiff's and Defendants' motions for default judgment.  That opinion

stated that the Court was:

> [t]hereby only deciding that [the CSX] Defendants have prevailed
> on the specific cross-claims they have put forward against G.O.D.
> and Riley [and that we] need not decide at th[at] juncture whether
> the damages awarded against Defendants as a result of this Court's
> Findings of Fact and Conclusions of Law qualify as damages for
> which Defendants are entitled to contribution under those cross-
> claims.

(Docket No. 180, at 14.)  The cross-claims put forward by the CSX Defendants against G.O.D. and Riley were for contribution under Section 113 of CERCLA, 42 U.S.C. § 9607, and under the New Jersey Spill Compensation and Control Act.  (Docket Entry No. 19, at 6-9.)

Pharmacia objects to the CSX Defendants' motion on several levels.   First, it submits to the Court that "Pharmacia's right to recovery from CSX under the Court's June 22, 2007 Order is unaffected by any judgment that CSX may obtain against [the Riley Defendants]"  (Pl. Opp'n at 1.)  Pharmacia insists that this latest motion by the CSX Defendants is nothing but an attempt to thwart or delay the enforcement of this Court's Order against the CSX Defendants.  (*Id.*)

Second, Pharmacia argues that the CSX Defendants have no legal basis to assert a claim for contribution against G.O.D. and Riley.  (*Id.* at 2.)  Indeed, Pharmacia claims that neither CERCLA nor the New Jersey Spill Compensation Act entitle them to the relief they seek.  (*Id.*)

Third, Pharmacia submits that the CSX Defendants' motion is also improper because it "is in essence a newly-asserted claim for fraud and summary judgment motion against Walter Riley, former president and majority shareholder of G.O.D., Riley Leasing, and Motor Carrier, who is not a defendant or cross-claim defendant in this action." (*Id.*)   Pharmacia adds that it is now too late to set forth claims against G.O.D. under the New Jersey Assignment for the Benefit of Creditors Act, and against Mr. Riley pursuant to his Chapter 7 bankruptcy proceeding.  (*Id.*)

Fourth, Pharmacia posits that the CSX Defendants' fraud claim against Walter Riley

cannot stand, because it amounts to a claim that G.O.D. and Riley Leasing should be held responsible for Mr. Riley's alleged representations to CSX Intermodal in 1997 and 1998.  Plaintiff suggests that the CSX Defendants argue, in essence, that the Riley Defendants induced CSX to purchase Motor Carrier, "merely because Mr. Riley was the president and majority shareholder of these two corporate entities who were not parties to the CSX/Motor Carrier transaction."  (*Id.* at 3.)  Pharmacia insists that this position has no support in the case-law, and should be disregarded by the Court.

Finally, Pharmacia submits that the CSX Defendants do not set forth any facts to support their right of contribution under the cross-claims against the Riley Defendants.  According to Pharmacia:

> the cross-claims rely solely on allegations concerning G.O.D.'s and Riley Leasing's activities at the Kearny Site between 1994 and 1998 . . . .  CSX's cross-claims make no mention of Walter Riley, his sale of Motor Carrier stock to CSX in 1998, or any alleged misrepresentations in connection thereto.

(*Id.* at 3.)

The CSX Defendants respond, as a threshold matter, that Pharmacia does not have standing to object to its motion for allocation and contribution from G.O.D., Inc. and Riley Leasing Corp. (CSX Def. Reply at 1.)  They conclude that "the Court should disregard Pharmacia's submission in its entirety, and order it stricken from the docket."  (*Id.*)

Turning to the merits of the motion, the CSX Defendants argue that "clean-up costs – whether denominated as 'costs or [sic] removal or remedial action' or 'costs of response' under CERCLA, or as 'cleanup and removal costs' under the Spill Act – are clearly recoverable under both of the statutes invoked by [their] cross-claims."  (CSX Def. Br. at 12.)  They add that the

same is true of the costs incurred by Pharmacia in connection with the CPG.  (*Id.* at 13-14.)

The CSX Defendants insist, moreover, that the Riley Defendants' equitable share of liability is 100%.  (*Id.* at 15.)  Indeed, the CSX Defendants explain that the "[a]llocation of liability in both CERCLA and Spill Act contribution actions is an equitable process."  (*Id.*)  Applying that standard to the case at bar, the CSX Defendants submit that the "single most important equitable factor relevant to the allocation of clean-up costs between the CSX Defendants and the Riley Defendants" is the 1997 Agreement.  (*Id.* at 16-17.)   As interpreted by the CSX Defendants,

> it provides Motor Carrier with a complete indemnification for all losses 'caused by or arising in connection with . . . any material misrepresentation . . . on the part of the Sellers under this Agreement,' *including Walter Riley*.

(*Id.* at 17 (emphasis added).)  According to the CSX Defendants, "[t]he Sellers undertook this obligation jointly and severally . . . ."  (*Id.*)

The CSX Defendants contend that Walter Riley triggered the indemnification clause of the Agreement when he, along with his fellow shareholders, allegedly represented to Intermodal that there was "no action, suit, arbitration proceeding, investigation, or inquiry pending or threatened against [Motor Carrier] or any Subsidiary."  (*Id.* at 17-18, *citing* 1997 Agreement § 3.14.)  In addition, the CSX Defendants claim that Walter Riley and his fellow shareholders also made misrepresentations to them when:

> [d]espite their [alleged] awareness of the EPA claim, they . . . represented and warranted that with the exception of those imposed by Motor Carrier's 1994 Kearny Site Purchase and Sale Agreement with Pharmacia (the '1994 Agreement') . . . 'neither Motor Carrier, nor any Person for whose conduct it is or may be held responsible has any Environmental , Health, or Safety Liabilities with respect to

11

> the Property,' and that there were 'no pending or threatened
> litigation, enforcement actions, notices of violation, directives or
> administrative orders involving [Motor Carrier] or the Property with
> respect to any Environmental Laws and neither [Motor Carrier], nor
> any Person for whose conduct it may be held responsible, has
> received any notice, request for information, claim, demand or other
> notification with respect to any Environmental Laws.

(*Id.* at 18-19, *citing* 1997 Agreement §§ 3.15(c)(i), 3.15(c)(4).)   The CSX Defendants conclude

that principles of equity warrant the shifting of 100% of the liability to the Riley Defendants.  (*Id.*

at 19.)  The CSX Defendants add that "[i]t is of no moment that the 1997 Agreement was

executed by Walter Riley rather than the companies he controlled."  (*Id.* at 19.)

As a threshold matter, the Court agrees with the CSX Defendants that Pharmacia lacks

standing to oppose the motion for contribution and allocation.  As we explained in our September

17, 2007 Opinion, the constitutional limitations of standing derive from Article III of the

Constitution, which limits the jurisdiction of the federal courts to deciding "actual cases and

controversies.  *See* U.S. CONST. ART. III.  "To meet the Article III standing requirements, a

plaintiff himself must have 'suffered some threatened or actual injury resulting from the putatively

illegal action.'" *Scanlin v. TD Waterhouse, Inc.*, No. 05-2458, 2006 U.S. Dist. LEXIS 86849, at

*6 (M.D. Pa. Nov. 30, 2006), *citing Warth v. Seldin*, 422 U.S. 490, 499 (1975).  As for the

prudential requirements, they dictate that a plaintiff "cannot rest his claim to relief on the legal

rights or interests of third parties." *Warth*, at 499.

There has been no indication in the record – and indeed no allegation by Plaintiff – that the

issue of contribution from the Riley Defendants has any impact on its right to contribution from

the CSX Defendants.  Pharmacia has no standing to put forward the arguments it presented to the

Court in its Brief in Opposition to the CSX Defendants' Motion for Allocation and Contribution.

While the Court might nonetheless consider a Pharmacia submission in the nature of an amicus brief, it need not address the various points raised there, because it is not persuaded that the CSX Defendants are entitled to the contribution they seek from the Riley Defendants.  The Supreme Court in *Cooper Indus., Inc. v. Aviall Serv., Inc.*, 543 U.S. 157 (2004) held that a private party who had not been sued under Sections 106 or 107(a) of CERCLA could not obtain contribution under Section 113(f)(1) from other liable parties.  *Id.* at 160.  In the case at bar, the CSX Defendants cannot claim to have been the target of a Section 106 or 107 suit.  They may not, therefore, seek contribution from the Riley Defendants under Section 113(f)(1).  Similarly, the Court holds that since CSX has not conducted any "clean up" of the Kearny Site, it cannot seek contribution under N.J.S.A. § 58:10-23.11f(2)(a).  The plain meaning of that provision excludes the CSX Defendants from its purview.[2]  The Court acknowledges that it had held  the CSX Defendants to have prevailed under their cross-claims against the Riley Defendants.  That decision, however, focused exclusively on the CSX Defendants' right to a default judgment.  An analysis of the nature of the cross-claims reveals that they cannot stand.

The Court need not rule on the allegations of fraud set out in the CSX Defendants' motion for contribution.  These claims made their first appearance in that filing, and were never set forth

---

[2]    The provision states, in relevant part:

> Whenever one or more dischargers or persons cleans up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

N.J.S.A. § 58:10-23.11f(2)(a).

as cross-claims against the Riley Defendants.  Even if they had been, however, the Court would

not be inclined to find for the CSX Defendants.  Indeed, their fraud claims appear to be based on

the principle that the Riley Defendants should be held responsible for alleged fraudulent

representations made by Mr. Riley simply because he is one of their shareholders – even though

neither Riley Defendant was a party to the Agreement between CSX, Mr. Riley and Motor

Carrier.  That position has, to the Court's knowledge,  no grounding in the case-law.  Tellingly,

the CSX Defendants offer no authority to support it.

**CONCLUSION**

Having reviewed the breakdown of attorneys' fees offered by Pharmacia, and for the

reasons set forth above, the Court holds that Pharmacia is entitled to attorneys' fees in the amount

of $469,360.24.   The Court will therefore grant Pharmacia's motion for attorneys' fees.  The

Court will, however, deny the CSX Defendants' motion for allocation and award of contribution.

An appropriate form of Order accompanies this Opinion.


Dated: January 9, 2008

                                                       s/ Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.